265 So.2d 695 (1972)
John Robert EARMAN, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 41771.
Supreme Court of Florida.
August 2, 1972.
Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, for petitioner.
Robert L. Shevin, Atty. Gen., and Nelson E. Bailey, Asst. Atty. Gen., for respondent.
PER CURIAM.
We have for review on petition for writ of certiorari a decision of the District Court of Appeal, Fourth District, upholding Petitioner John Robert Earman's convictions of conspiracy to commit a felony, sale of *696 marijuana, and possession of marijuana. Earman v. State, Fla.App. 1971, 253 So.2d 481. Because that decision conflicts with this Court's decision in Benefield v. State, Fla. 1964, 160 So.2d 706, and the decision of the District Court of Appeal, Second District, in Urquhart v. State, Fla.App. 1968, 211 So.2d 79 we accepted jurisdiction to consider the cause.
The salient facts in this case are as follows: One Randy Burger named Petitioner John Robert Earman and Jimmy Rasimowicz as his marijuana sources. Cooperating with the police Burger telephoned Petitioner's parents' home and learned Rasimowicz would soon return with marijuana. Later the same day, Burger called the Earman home and made arrangements with Rasimowicz to purchase one-half pound of the narcotic from him for $175. West Palm Beach Police Officer Foster listened to these conversations from an extension telephone. The police then searched Burger and gave him $175 in marked money. Burger went to the Earman residence, met Rasimowicz, went inside with him, and shortly thereafter left alone. After driving one block he was stopped by the police who searched him and found on his person one-half pound of marijuana but none of the money. Then, according to the District Court opinion being reviewed,
"Burger stated that while in the residence he had purchased the marijuana from Rasimowicz with [petitioner] looking on. Det. Foster with other Officers immediately took Burger back to the residence where he entered a side door and called for Rasimowicz and [petitioner]. In response to the call, [petitioner] appeared on an upstairs landing, at which time Officer Foster and other members of the police, without either knocking or announcing their authority or purpose, rushed into the house. At least one of the officers had gun drawn and ordered [petitioner] to stand still. Rasimowicz appeared briefly on the upstairs landing, then ran and made good an escape from the premises in spite of the fact that officers immediately went upstairs and made a search of the upstairs area. [Petitioner] was placed under arrest and searched but none of the marked money was found. After being advised of his rights [petitioner] was taken into an upstairs bedroom where he signed a written consent to a search of the premises. After the consent had been signed, the officers found in the same bedroom in plain view on the bed where [petitioner] had been seated, a large shoe box containing one-half pound of marijuana in plastic bags."
Prior to his trial, Petitioner moved to suppress the evidence. The motion was denied, and he was convicted by a jury. On appeal to the District Court of Appeal, Fourth District, he assigned as error the trial court's denial of the motion and set forth certain reasons in support of his position that the evidence was illegally seized and therefore should have been suppressed. The only point on appeal material to our review of the District Court's decision is Petitioner's contention that the evidence taken from his parents' home should not have been admitted at trial because it was the fruit of an illegal arrest made without warrant or compliance with the provisions of F.S. Section 901.19(1), F.S.A. The District Court said this contention was without merit and the evidence was admissible for two alternative reasons: first, it was seized pursuant to a consent search rather than a search following an arrest and, secondly, even if it had been taken pursuant to an arrest, the arrest was valid under the applicable statutes, making the search valid. We shall review both of these conclusions, beginning with the second.
Arrests without warrant are permissible under certain circumstances enumerated in F.S. Section 901.15, F.S.A. Applicable to this cause is subsection (3) of the statute which states that a police officer may arrest without a warrant when "He reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has *697 committed or is committing it." If the suspected felon is within a building, however, strict adherence to F.S. Section 901.19(1), F.S.A., is necessary. Benefield v. State, supra. That section provides:
"If a peace officer fails to gain admittance after he has announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be." (Emphasis supplied.)
In Benefield this Court said:
"... that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted." Benefield v. State, supra, 160 So.2d at 710.
In the instant case the District Court properly concluded the arresting officer had probable cause to arrest Petitioner without warrant under F.S. Section 901.15 (3), F.S.A. However, it erroneously concluded the unannounced entry into the Earman home for the purpose of making that arrest was proper. The District Court said:
"... the officers' failure to comply with the statutory requirements of F.S. Section 901.19(1), F.S.A., comes within the exception announced by this court in the case of State v. Clarke, Fla.App. 1970, 242 So.2d 791, i.e., that the arresting officers could reasonably fear that the evidence would be destroyed had they delayed their entrance in order to comply with the statute. We recognize that we apply the Clarke exception here as a matter of law since none of the officers expressly testified that they entertained a concern that the evidence might be destroyed." (Emphasis supplied.)
An appellate court is not justified in concluding there was such an exception as a matter of law when the record is devoid of any testimony by police officers or other competent evidence showing they had reason to fear at time of entry the destruction of evidence. Once Earman challenged his arrest, the burden of proving its validity as a predicate for the lawful admission of the seized marijuana in evidence, was upon the State. Urquhart v. State, supra. Essential to such proof in this case is testimony by the arresting officers or other competent evidence that they had reasonable grounds to believe the marijuana within the house would be immediately destroyed if they announced their presence. Absent such evidence, the fruits of any search conducted pursuant to such arrest must be considered illegally obtained.
Furthermore, the search in this case did not lose its unconstitutional taint because Earman consented to it following his unlawful arrest. As in Urquhart the circumstances show the consent was less than completely free and voluntary. Earman consented to it only after police officers, at least one of whom had a drawn gun, made a preliminary search of the house, illegally arrested and searched him, and took him to an upstairs bedroom. He signed the consent sitting on a bed beside an open box of marijuana wrapped in plastic bags. A consent to search for marijuana made under such tainted circumstances cannot be constitutionally upheld.
Because it was seized pursuant to an unconstitutional consent, the marijuana evidence *698 in this cause should not have been introduced at trial. Accordingly, the decision of the District Court of Appeal, Fourth District, is quashed and the cause remanded for disposition not inconsistent herewith.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents.